IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 24-cv-__

LAURELEI O'RYAN,

Plaintiff,

vs.

CITY OF FORT COLLINS,

Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Laurelei O'Ryan, by her attorney Robert M. Liechty, brings her complaint as follows:

1. Defendant City of Fort Collins has a water treatment department which is composed of four sections (operators, maintenance, lab, and water resources) with approximately 22-23 employees. Of these employees, only two were female during the pertinent time, plaintiff Laurelie O'Ryan and Kathleen Ganzer, who ran the lab. Plaintiff worked in the water treatment department for five years from May, 2018, through her termination on June 15, 2023.

2. Plaintiff alleges that she was terminated because of gender discrimination and retaliation for complaining of gender discrimination. She filed a complaint of discrimination and retaliation with Colorado's Civil Rights Division and received a right

to sue letter dated May 28, 2024. She has timely filed her complaint in this court, which has jurisdiction and venue over her complaint under Title VII.

3. Ms. O'Ryan received an associates degree in water quality management from Red Rocks Community College in 2013. She has been a certified water treatment operator for approximately 10 years. She interned at the City of Louisville and Aurora water departments. The Aurora water department is considered one of the best water departments in the nation.

4. Towards the end of 2017, Tyler Wells, Colby Groves, and plaintiff applied for a water treatment operator position with the City. Mr. Wells, who had worked as an operator for the department before, was hired and plaintiff does not challenge his hire. Plaintiff asked that she be considered for the next opening.

5. Mr. Groves had already been working for the City as a utility maintenance operator, a position lower than a water treatment operator.

6. In May, 2018, the department promoted Mr. Groves to a water treatment operator position, without informing plaintiff that this position was open, because the department did not want to explain why it did not hire plaintiff. Mr. Groves had a D certification, while plaintiff had an A certification. Plaintiff had two years experience as an operator and Mr. Groves had no experience.

7. Instead of informing plaintiff of the open operator position, the City offered plaintiff Mr. Grove's old position as utility maintenance operator. Plaintiff accepted this offer even though it was beneath her experience and certification level.

8. In approximately January, 2019, the City had an open water treatment operator position, for which plaintiff applied. However, the City pushed back the hiring of this position for five months to try to obtain more A-certified operators to compete with plaintiff for the position. At the time that the City promoted plaintiff to the operator position, in June, 2019, there were three openings and plaintiff was the only A-certified operator who was hired into any of the positions.

9. Jeff Monson, a lead operator who sat on plaintiff's above June hiring panel, said that he did not think that women could do the job of water treatment operator. Gregg Stonecipher, who was on the same hiring panel, told plaintiff that he noticed that plaintiff was being discriminated against in the interview process. He also asked Deb Mossberg, in human resources, if she noticed it. She did, but, because plaintiff was promoted to the operator position, nothing came of this.

10. Towards the end of 2019, plaintiff's then-lead operator, Dale Schnathorst, recommended that plaintiff be promoted to the next highest level within her position, contingent upon the completion of two tasks.

11. Shortly thereafter, in approximately November, 2019, Tyler Wells was promoted to lead operator and he became plaintiff's supervisor. He said that in order for plaintiff to be promoted, she had to complete more tasks than that required by Mr. Schnathorst, and possibly a third list of tasks, before she could receive the promotion. No male was required to jump through such hoops. Plaintiff complained to HR who noted that this was moving the bar she had to clear to receive the promotion.

12. Plaintiff and Mr. Wells discussed this matter on January 9, 2020. Plaintiff was upset about the extra requirements put on her, and not on the male employees, and vigorously contested what Mr. Wells was doing to her. Plaintiff was not disciplined nor written up for this disagreement on January 9, although she was given a poor QPA (Quarterly Performance Alignment) for the next quarter because she had challenged Mr. Wells.

13. In early 2020, Ken Morrison, plaintiff's next level supervisor above Mr. Wells, said that he wanted to delay the level promotions for the operators. However, the only operator to which he delayed such a promotion was plaintiff. In fact, both Casey Blosser and Erik Monahan later moved up immediately when they obtained their A certifications.

14. Mark Kempton, the department director, met with all his employees, believed to be in 2021, following a survey done of the department. In plaintiff's meeting with him, she complained to him of the gender discrimination that she observed. Her complaint had no effect.

15. Gregg Stonecipher was promoted to the department's director position in approximately August-September, 2022. The only other woman in the department, Kathleen Ganzer, applied for his vacant position as head of the lab. She had been the lab's lead chemist for 30 years. In approximately November, 2022, the City gave the job to Erik Monahan, who had 3½-years experience in the water treatment department and only some part-time work experience in the lab as an intern.

16. Plaintiff was told Ms. Ganzer was not given the promotion because she provided too much detail in her interview.

17. Also in November, 2022, plaintiff applied for a lead operator position. The City gave the position to Casey Blosser. Mr. Blosser had only recently obtained an A certification, while plaintiff had had her A certification for five years. Plaintiff had a degree in water quality management and had substantially more experience in water treatment than did Mr. Blosser.

18. In the interview for this promotion, plaintiff proposed numerous ideas for improvements. After she was passed over for the promotion, when the City gave the promotion to Mr. Blosser, Ken Morrison, plaintiff's supervisor, said that the department still wanted to implement her ideas. That is, the department would use her ideas, but it would not advance her in her career.

19. Plaintiff asked both her lead operator, Tyler Wells, and her new department head, Gregg Stonecipher, why she was not given the promotion to lead operator. Both separately told her that Mr. Blosser did better in his interview in answering technical questions. Plaintiff alleges that he was coached regarding the answers to the technical questions.

20. When Jeff Monson was promoted to a lead position in 2018, everyone knew that he was the least technically skilled applicant for the position. When Colby Groves was hired as an operator, he said that during his interview he could not even remember for what chlorine was used. On the other hand, plaintiff was told that Ms. Ganzer was too detailed in answering the technical questions.

21. Mr. Wells told plaintiff that work experience with the City did not matter in the promotion of Mr. Blosser. Nonetheless, Mr. Wells also said that Mr. Blosser had better experience than plaintiff because he worked the day shift. In fact, plaintiff had far more experience than did Mr. Blosser.

22. In November-December, 2022, plaintiff was still upset that neither she nor Ms. Ganzer had been promoted. She complained separately both to Mr. Wells (three times) and to Mr. Stonecipher (once) that she thought women were treated differently than men in the department. City policy required that they report plaintiff's complaints to human resources, but they did not.

23. On Thursday, January 5, 2023, at approximately 6:30 a.m., just before the end of plaintiff's night shift, Tyler Wells came on duty and started small talk with plaintiff in the secondary control room. Plaintiff tried to avoid him because she was still upset over the fact that neither she nor Ms. Ganzer had been promoted and she was upset over the excuses given to justify these actions.

24. Mr. Wells asked plaintiff, "Why are you being like this?" to which plaintiff replied that she was still upset about how women were treated in the department. She also said, "You should be scared about how bad this looks." Mr. Wells alleges that he then asked plaintiff, "Are you threatening me?" to which he claims that plaintiff said that she was threatening him. Plaintiff did not threaten him.

25. Instead, plaintiff said, "That's not a threat. How can you even call that a threat?" Mr. Wells wrote two emails on January 5 to plaintiff within an hour after the alleged threat. In neither email did he say that he felt physically threatened.

26. After the above discussion on January 5, Mr. Wells left the control room, crossed a landing, went down the stairs, and was on the lower floor approximately 10-15 feet from plaintiff when she slammed the control-room door closed.

27. Plaintiff was suspended on the next day, January 6, 2023, and never returned to work.

28. On January 17, 2023, plaintiff sent an email to Gregg Stonecipher stating that she was upset because less experienced males were consistently getting promotions over more experienced women. She also noted that the justifications for these promotions kept changing, which she had brought up with several managers over several years to no avail.

29. On January 23, 2023, Mr. Wells wrote a recommendation to terminate plaintiff based upon the argument that happened on January 5 and also what happened in January, 2020, referenced in ¶ 12 above.

30. Because plaintiff had complained of gender discrimination and retaliation, the City obtained a third party to investigate the complaint prior to plaintiff's termination. The City refused to release that investigation to plaintiff, but she was told that the third party found no evidence of discrimination or retaliation.

31. On June 15, 2023, Jeremy Woolf, the senior director of integrated water operations, approved the recommendation to terminate. Plaintiff was terminated for violating two personnel policies (1) for "abusive or threatening treatment of any person" and (2) for "threats and violence."

32. Mr. Woolf found the following: plaintiff "told Mr. Wells, 'you should be scared.' I believe any reasonable person would perceive this as a threat to their personal safety, as Mr. Wells has. I also believe I have a responsibility to avoid placing Mr. Wells or others at risk, and your own words indicate you pose this risk." This finding is not believable.

33. Plaintiff was 54 years old and stands 5'2" tall. Mr. Wells was approximately 37 years old and stands over 6 feet tall. It is not credible that anyone would believe that Mr. Wells would have felt physically threatened by plaintiff. Nonetheless, that was the excuse used to terminate plaintiff.

34. Furthermore, such talk is typical in the department and goes without punishment for the males. In 2019, Zach Gilbert and Jeff Monson were involved in a heated verbal fight in the control room. Neither was terminated and Mr. Monson was even promoted soon thereafter.

35. Prior to 2018, Dale Schnathorst lost his temper because the City had installed surveillance cameras. He dropped his trousers and "mooned" a camera, he gave the middle finger to a camera, and he broke a piece off one of the cameras. He then slammed a door open so that the handle made a hole in the wall which had to be patched with a metal plate. He was not disciplined but, instead, was sent to anger management classes and later promoted.

36. John Grimm had a long-standing habit of sleeping between 12:00 and 4:00 a.m. on every shift. Although this was well known, he was never talked to about it nor disciplined.

37. Mr. Grimm also had a history of losing his temper, throwing books, and raising his voice at supervisors. He suffered no consequences because of his outbursts.

38. Kyle Holmes, an operator, had a heated argument in the break room, but suffered no consequences. This occurred prior to plaintiff's employment. He said that he observed that women were treated differently than were men.

***Claim of Discrimination***

39. The City discriminated against plaintiff's sex when it failed to hire her in May, 2018, as a water treatment operator, as stated in ¶ 6 above. Second, it discriminated against her in delaying her level promotion as described in ¶ 8 above. Third, it discriminated her against her in November, 2022, when it failed to promote her to the lead operator position as referenced in ¶ 17 above. Finally, it discriminated against her by terminating her employment on June 15, 2023.

40. But for the fact that plaintiff was a woman, she would have received these promotions and would not have been terminated. This failure on the part of the City violates Title VII, 42 USC §2000e-2a.

41. As a result of this violation, plaintiff has suffered lost wages and emotional damages and is entitled to recovery under §2000e-5(g) and 42 USC §1981A(b)(3).

42. She is also entitled to her attorney's fees under §2000e-5(k).

***Claim of Retaliation***

43. But for the fact that plaintiff complained of sexual discrimination on multiple occasions to multiple people in the City, plaintiff would not have been terminated. This retaliation violates plaintiff's rights under 42 USC §2000e-3.

44. As a result of this termination, plaintiff is entitled to damages under 42 USC §2000e-5(g) and 42 USC §1981A(b)(3).

45. She is also entitled to her attorney's fees under §2000e-5(k).

WHEREFORE, plaintiff Laurelei O'Ryan respectfully requests that this court enter judgment in her favor and for costs, interest, attorney's fees, and such other relief as this court may deem proper.

Plaintiff requests trial to a jury.

Respectfully submitted this August 23, 2024.

By: s/ *Robert M. Liechty*

Robert M. Liechty
ROBERT M LIECHTY PC
1800 Gaylord St.
Denver, Colorado 80206
Tel: (303) 861-5300
Fax: (303) 861-2746
Email: rliechty@crossliechty.com

Courtesy copy:

City Attorney Carrie Daggett, via email