IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02336-RMR-NRN

LAURELEI O'RYAN,

Plaintiff,

v.

CITY OF FORT COLLINS,

Defendant.

---

**DEFENDANT'S ANSWER TO COMPLAINT AND JURY DEMAND AND DEFENDANT'S DEMAND FOR JURY TRIAL**

---

Defendant, City of Fort Collins, by and through its counsel, Kendra K. Smith, Esq. and Danyelle Semjonovs, Esq., of Hall & Evans, L.L.C., respectfully submit this Answer to the Complaint and Jury Demand and Defendant's Demand for Jury Trial, as follows:

1. Defendant admits it has a Water Treatment Department composed of four sections (operators, maintenance, lab, and water resources). Defendant admits Plaintiff and Kathleen Ganzer are female and were employed by Defendant in the Water Treatment Department, but denies these two individuals were the only female employees in the Water Treatment Department during Plaintiff's employment. Defendant admits Plaintiff worked in the Water Treatment Department beginning in or around May 2018 until the time of her termination of employment on or around June 15, 2023. Defendant denies the remaining allegations in paragraph 1 of Plaintiff's Complaint and Jury Demand

("Complaint").

2. Defendant admits jurisdiction and venue are proper in this Court. Defendant admits Plaintiff filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") and the U.S. Equal Employment Opportunity Commission ("EEOC"), and affirmatively states, that Charge, in its entirety, speaks for itself and denies all allegations in paragraph 2 of Plaintiff's Complaint inconsistent therewith. Defendant denies Plaintiff states any cognizable claims against it. Defendant affirmatively states, as to Plaintiff's CCRD Charge, the CCRD issued a no probable cause finding, which Plaintiff appealed to the Colorado Civil Rights Commission. Defendant affirmatively states the Colorado Civil Rights Commission upheld the no probable cause finding as to Plaintiff's CCRD Charge. Defendant affirmatively states, in a separate determination, the EEOC adopted the findings of the CCRD with respect to Plaintiff's Charge of Discrimination. Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 2 of Plaintiff's Complaint and therefore denies same.

3. Defendant admits, upon information and belief, Plaintiff received an associates degree in water quality management from Red Rocks Community College. Defendant admits, upon information and belief, Plaintiff has been a certified water treatment operator. Defendant admits, upon information and belief, Plaintiff interned at the City of Louisville and Aurora water departments. Defendant admits the Aurora water department has facilities that have been recognized by the Partnership for Safe Water for "Excellence in Water Treatment." Defendant is without sufficient knowledge or

information to form a belief as to the truth of the remaining allegations in paragraph 3 of Plaintiff's Complaint and therefore denies same.

4. Defendant admits, in or around 2017, Tyler Wells, Colby Groves, and Plaintiff each applied for a Plant Operator[1] position at Defendant. Defendant admits Mr. Wells, who had worked as an Operator for the department before, was hired, and Plaintiff asked to be considered for the next opening. Defendant affirmatively states the remaining allegations in paragraph 4 of Plaintiff's Complaint do not state allegations of fact to which a response is required. To the extent any further response is required, Defendant denies the remaining allegations in paragraph 4 of Plaintiff's Complaint.

5. Defendant admits Mr. Groves had been working for the City as a Utility Maintenance Operator. Defendant admits that the Utility Maintenance Operator position has a lower pay scale, but denies that the Utility Maintenance Operator is "lower" than the Plant Operator position, and affirmatively states this allegation is misleading and a matter of opinion. Defendant affirmatively states, the Utility Maintenance Operator position does not report to Plant Operators, nor is "lower" in the organizational chart. To the extent any further response is required, Defendant denies the remaining allegations in paragraph 5 of Plaintiff's Complaint.

6. Defendant admits that, in or around May of 2018, Mr. Groves was hired into a Plant Operator position and this position held a higher pay scale than the previous position Mr. Groves held. It is admitted, upon information and belief, that Mr. Groves

[1] Throughout the Complaint, Plaintiff uses the terminology "Water Treatment Operator." The correct terminology is "Plant Operator."

held a D certification, and Plaintiff held an A certification. It is denied that Mr. Groves had "no experience" as alleged by plaintiff in this paragraph. Defendant denies the remaining allegations in paragraph 6 of Plaintiff's Complaint.

7. Defendant admits it offered Plaintiff and Plaintiff accepted the position of Utility Worker in Defendant's water treatment facility in or around May of 2018. Defendant denies the remaining allegations in paragraph 7 of Plaintiff's Complaint.

8. Defendant admits in early 2019, the reporting structure for Utility Worker positions was changed. Defendant admits, in or around June of 2019, Plaintiff was promoted to the position of Plant Operator after completing a competitive hiring process. Defendant denies the remaining allegations in paragraph 8 of Plaintiff's Complaint.

9. Defendant admits Jeff Monson, Lead Operator, participated in the hiring panel for the position of Plant Operator, the position to which Plaintiff was promoted in or around June of 2019. Defendant admits Gregg Stonecipher, Director of Plant Operations, also participated in the hiring panel for the position of Plant Operator, the position to which Plaintiff was promoted in or around June of 2019. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations that Mr. Monson made a statement that he did not think women could do the job of Water Treatment Operator and therefore denies same. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations that Mr. Stonecipher told Plaintiff she was being discriminated against in the interview process and therefore denies same. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations that Mr. Stonecipher asked Deb Mossburgh,

Human Resources, if Ms. Mossberg noticed discrimination against Plaintiff in the interview process and therefore denies same. Defendant is without sufficient knowledge or information to form a belief as to what Ms. Mossburgh noticed and therefore denies same. To the extent any further response is required, Defendant denies the remaining allegations in paragraph 9 of Plaintiff's Complaint.

10. Defendant admits, from the time of Plaintiff's promotion to Plant Operator in or around June of 2019 until in or around December 2019, Plaintiff reported to Dale Schnathorst, Lead Operator. Defendant affirmatively states Mr. Schnathorst retired from Defendant in or around December of 2019. Defendant is without sufficient knowledge or information to form a belief as to what Mr. Schnathorst told Plaintiff regarding promotion to the next highest level within Plaintiff's position and therefore denies same. To the extent any further response is required, Defendant denies the remaining allegations in paragraph 10 of Plaintiff's Complaint.

11. Defendant admits, Plaintiff reported to Tyler Wells, Lead Operator, in Plaintiff's role as Plant Operator with Defendant. Defendant affirmatively states, following Mr. Schnathorst's retirement in or around December 2019, Plaintiff began reporting to Mr. Wells. Defendant admits, upon information and belief, there was an ethics hotline complaint, but Defendant lacks sufficient knowledge or information to form a belief as to who made that complaint and therefore denies Plaintiff complained to Human Resources. Defendant denies the remaining allegations in paragraph 11 of Plaintiff's Complaint.

12. Defendant admits, under Mr. Wells' supervision, Plaintiff was given

Quarterly Performance Alignments. Defendant affirmatively states, the Quarterly Performance Alignments, in their entirety, speak for themselves and Defendant denies any allegation in paragraph 12 of Plaintiff's Complaint inconsistent therewith. Defendant denies the remaining allegations in paragraph 12 of Plaintiff's Complaint.

13. Defendant admits, Ken Morrison held the role of Manager of Plant Operations at Defendant since in or around March of 2015, and as a result, was above Mr. Wells in the organizational hierarchy. Defendant denies the remaining allegations in paragraph 13 of Plaintiff's Complaint.

14. Defendant admits, Mark Kempton held the role of Director of Plant Operations. Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 14 of Plaintiff's Complaint and therefore denies same.

15. Defendant admits Mr. Stonecipher has held the position of Director of Plant Operations since in or around August or September 2022. Defendant denies Ms. Ganzer, Chemist, was the only other female employee in the Water Treatment Department at the time of Plaintiff's employment with Defendants. Defendant admits Ms. Ganzer applied for a position as Water Quality Service Manager and did not receive the role. Defendant admits in or around November of 2022, Defendant hired Erik Monahan as Water Quality Service Manager. Defendant denies the remaining allegations in paragraph 15 of Plaintiff's Complaint.

16. Defendant is without sufficient knowledge or information to form a belief as to the truth of what was discussed with Plaintiff regarding Mr. Monahan's selection for the

Water Quality Service Manager role over any other candidates, including Ms. Ganzer, and therefore denies same.

17. Defendant admits, in or around November of 2022, Plaintiff, along with three of her male coworkers, all of whom were employed as Operators, applied for a Lead Operator position left vacant as a result of the resignation of Christopher ("Topher") Johnson. Defendant affirmatively states, in addition to Plaintiff, the other applicants for the Lead Operator position were Casey Blosser, Adam Gerdes, and Kelly Caldwell. Defendant admits, upon information and belief, Plaintiff has a degree in water quality management. Defendant denies Defendant "gave" the Lead Operator position to Mr. Blosser, and affirmatively states Defendant selected Mr. Blosser for the Lead Operator position following an interview process conducted by a panel of employees. Defendant affirmatively states, Ken Morrison, as Manager of Plant Operations, assembled a hiring panel composed of the following individuals: (a) Gregg Stonecipher (male), Director of Plant Operations, (b) Leslie Hill (female), Director of Sciences, (c) Scott Foreman (male), Senior Supervisor of Maintenance, (d) Kathleen Ganzer (female), Chemist, (e) Ross Lamb (male), Supervisor of Plant Operations, and (f) Tyler Wells (male), Lead Operator. Defendant affirmatively states the hiring panel posed the same interview questions to each candidate for the Lead Operator position, numerical scores were given to each candidate by the panelists, each candidate was discussed by the panelists after the numerical scores were given, and Mr. Blosser ranked highest in numerical scores and all panelists were comfortable with Mr. Blosser's selection for the role of Lead Operator. Defendant affirmatively states, Plaintiff was not selected for the position because she did

not perform as well as the other candidates during the panel interview process, and Plaintiff ranked third lowest overall in the numerical scores provided by the interview panel. Defendant denies the remaining allegations in paragraph 17 of Plaintiff's Complaint.

18. Defendant admits, during the panel interview process for the role of Lead Operator, Plaintiff provided responses to the questions posed by the interview panelists. Defendant affirmatively states all three other candidates for the Lead Operator role provided responses to the questions posed by the interview panelists. Defendant affirmatively states Plaintiff and the three other candidates for the Lead Operator role were each asked the same interview questions from the panelists. Defendant admits Defendant selected Mr. Blosser for the role of Lead Operator following the panel interview process. Defendant denies the remaining allegations in paragraph 18 of Plaintiff's Complaint.

19. Defendant admits Plaintiff asked Mr. Wells and Mr. Stonecipher why Plaintiff was not selected for the position of Lead Operator, and Mr. Wells and Mr. Stonecipher informed Plaintiff that Mr. Blosser performed better than Plaintiff during the panel interview process. Defendant is without sufficient knowledge or information to form a belief as to the truth of what Plaintiff alleges as to Mr. Blosser being "coached" and therefore denies same. Defendant denies the remaining allegations in paragraph 19 of Plaintiff's Complaint.

20. Defendant is without sufficient knowledge or information to form a belief as to the truth of what Plaintiff was told about Colby Groves and therefore denies same.

Defendant denies the remaining allegations in paragraph 20 of Plaintiff's Complaint.

21. Defendant admits Mr. Blosser worked the day shift prior to his selection for the Lead Operator position. Defendant denies the remaining allegations in paragraph 21 of Plaintiff's Complaint.

22. Defendant denies the allegations in paragraph 22 of Plaintiff's Complaint.

23. Defendant admits Mr. Wells approached Plaintiff, who was working in the Plant library, on or around the morning of January 5, 2023. Defendant affirmatively states Mr. Wells approached Plaintiff to address chlorine levels at the Water Treatment Facility. Defendant is without sufficient knowledge or information to form a belief as to the truth as to why Plaintiff tried to avoid Mr. Wells and therefore denies same. Defendant denies the remaining allegations in paragraph 23 of Plaintiff's Complaint.

24. Defendant admits Mr. Wells approached Plaintiff, who was working in the Plant library, for the purpose of addressing chlorine levels at the Water Treatment Facility, an exchange occurred between Mr. Wells and Plaintiff, Mr. Wells asked Plaintiff if Plaintiff was threatening Mr. Wells and Plaintiff said she was, and Mr. Wells felt unsafe during this exchange. Defendant affirmatively states, when Mr. Wells approached Plaintiff to address chlorine levels, Plaintiff became upset with Mr. Wells and stated, "You should be scared." Defendant affirmatively states, Mr. Wells asked Plaintiff if she was threatening him, and Plaintiff responded that she was. Defendant affirmatively states, Mr. Wells felt unsafe and walked away to leave the room to remove himself from the situation. Defendant affirmatively states Plaintiff then followed Mr. Wells to the door and slammed the door behind Mr. Wells in a manner that shook the hallway. Defendant affirmatively

states, after Mr. Wells had physically removed himself from Plaintiff, Plaintiff called Mr. Wells on the phone and yelled at Mr. Wells at a volume loud enough for Mr. Blosser to overhear Plaintiff yelling at Mr. Wells through Mr. Wells' phone. Defendant affirmatively states Mr. Wells and Mr. Blosser reported this incident to Mr. Morrison and Mr. Stonecipher, and Defendant placed Plaintiff on paid administrative leave for this incident the following day. Defendant denies the remaining allegations in paragraph 24 of Plaintiff's Complaint.

25. Defendant admits Mr. Wells wrote emails on or about January 5, 2023, following the incident with Plaintiff, and affirmatively states, the emails, in their entirety, speak for themselves and denies any allegations in paragraph 25 of Plaintiff's Complaint inconsistent therewith. Defendant denies the remaining allegations in paragraph 25 of Plaintiff's Complaint.

26. Defendant admits Plaintiff slammed the door to the Plant library as Mr. Wells walked away from Plaintiff during the exchange on or about January 5, 2023. Defendant affirmatively states Mr. Wells felt unsafe during this exchange with Plaintiff. Defendant denies the remaining allegations in paragraph 26 of Plaintiff's Complaint.

27. Defendant admits Plaintiff was placed on paid administrative leave on or about January 6, 2023, the day following Plaintiff's threats toward Mr. Wells. Defendant affirmatively states, following Plaintiff's placement on administrative leave, a memorandum was issued by Mr. Wells on or about January 23, 2023, recommending the termination of Plaintiff's employment from Defendant. Defendant affirmatively states, on or about January 24, 2023, a first pre-decision hearing was scheduled with respect to the

recommendation of termination on or about January 5, 2023. Defendant affirmatively states, during the first pre-decision hearing, Plaintiff alleged Defendant was discriminating against her, causing Defendant to then halt the disciplinary process to investigate Plaintiff's allegations. Defendant affirmatively states, on or about May 1, 2023, following the conclusion of a third-party investigation into Plaintiff's allegations of discrimination, a revised memorandum was issued by Mr. Wells recommending termination of Plaintiff's employment. Defendant affirmatively states, on or about May 11, 2023, a pre-decision hearing was held before Jeremy Woolf, Senior Director of Water Operations, Maryann Fillingim, Human Resources Business Partner, and Ryan Malarky, Assistant City Attorney, to address the recommendation of termination, and during that pre-decision hearing, Plaintiff was present and represented by legal counsel. Defendant affirmatively states, on or about June 15, 2023, Mr. Woolf issued a Memorandum of Determination, terminating Plaintiff's employment with Defendant effective the same date. Defendant affirmatively states, Plaintiff later appealed the termination decision to Kendall Minor, Utilities Service Area Director, and on or around July 24, 2023, an appeal hearing was held before Mr. Minor in which he upheld the termination decision. Defendant affirmatively states, Plaintiff was then advised of her right to appeal the Utility Service Area Director's decision to City Manager Kelly DiMartino, and Plaintiff filed an appeal to the City Manager on or about August 25, 2023. Defendant affirmatively states, on or about December 8, 2023, a post-decision appeal hearing was held by an independent hearing officer assigned by the City Manager, and the independent hearing officer upheld the termination decision. To the extent any further response is required, Defendant

denies the remaining allegations in paragraph 27 of Plaintiff's Complaint.

28. Defendant admits on or about January 17, 2023, Plaintiff sent an email to Mr. Stonecipher, and affirmatively states, the email in its entirety speaks for itself and denies any allegations in paragraph 28 of Plaintiff's Complaint inconsistent therewith. To the extent any further response is required, Defendant denies the remaining allegations in paragraph 28 of Plaintiff's Complaint.

29. Defendant admits, a memorandum was issued by Mr. Wells on or about January 23, 2023, recommending the termination of Plaintiff's employment from Defendant, and affirmatively states, the memorandum, in its entirety, speaks for itself and denies any allegations in paragraph 29 of Plaintiff's Complaint inconsistent therewith. Defendant denies the remaining allegations in paragraph 29 of Plaintiff's Complaint.

30. Defendant admits, during Defendant's pre-disciplinary process to address the incident between Plaintiff and Mr. Wells on or about January 5, 2023, Plaintiff raised allegations of discrimination, Defendant halted the pre-disciplinary process and undertook a third-party investigation into Plaintiff's allegations, the investigation found no evidence of discrimination or retaliation, the third-party investigation was initiated at the direction of Defendant's City Attorney's Office, and Defendant notified Plaintiff of the findings of the investigation but did not release any underlying reports from the investigation as Defendant maintains its attorney-client privilege over those reports. To the extent any further response is required, Defendant denies the remaining allegations in paragraph 30 of the Complaint.

31. Defendant admits, on or about June 15, 2023, Jeremy Woolf, Senior

Director of Water Operations, issued a Memorandum of Determination, terminating Plaintiff's employment with Defendant effective the same date, as a result of the pre-decision hearing that occurred on or about May 11, 2023, and affirmatively states, the Memorandum of Determination, in its entirety, speaks for itself and denies any allegations in paragraph 31 of Plaintiff's Complaint inconsistent therewith. To the extent any further response is required, Defendant denies the remaining allegations in paragraph 31 of Plaintiff's Complaint.

32. Defendant admits, on or about June 15, 2023, Jeremy Woolf, Senior Director of Water Operations, issued a Memorandum of Determination, terminating Plaintiff's employment with Defendant effective the same date, as a result of the pre-decision hearing that occurred on or about May 11, 2023, and affirmatively states, the Memorandum of Determination, in its entirety, speaks for itself and denies any allegations in paragraph 32 of Plaintiff's Complaint inconsistent therewith. To the extent any further response is required, Defendant denies the remaining allegations in paragraph 32 of Plaintiff's Complaint.

33. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding the heights and ages of Plaintiff and Mr. Wells and therefore denies same. Defendant affirmatively states the remaining allegations in paragraph 33 of Plaintiff's Complaint fail to state allegations of fact requiring a response from Defendant. To the extent any further response is required, Defendant denies the remaining allegations in paragraph 33 of Plaintiff's Complaint.

34. Defendant admits Zach Gilbert and Jeff Monson's employment with

Defendant was not terminated. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding whether Mr. Gilbert and Mr. Monson were involved in a "heated verbal fight" and therefore denies same. Defendant denies the remaining allegations in paragraph 34 of Plaintiff's Complaint.

35. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding whether, prior to 2018, Dale Schnathorst lost his temper because Defendant installed surveillance cameras, dropped his trousers and "mooned" a camera, gave the middle finger to a camera, broke a piece off one of the cameras, and slammed a door open so that the handle made a hole in the wall and therefore denies same. Defendant denies the remaining allegations in paragraph 35 of Plaintiff's Complaint.

36. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding whether John Grimm slept between 12:00 and 4:00 a.m. on every shift and therefore denies same. Defendant denies the remaining allegations in paragraph 36 of Plaintiff's Complaint.

37. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding whether Mr. Grimm lost his temper, threw books, and raised his voice at supervisors and therefore denies same. Defendant denies the remaining allegations in paragraph 37 of Plaintiff's Complaint.

38. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding whether Kyle Holmes, an Operator, had a heated argument in the break room and made any statements about the treatment of women and

men and therefore denies same. Defendant denies the remaining allegations in paragraph 38 of Plaintiff's Complaint.

**<u>Response to "Claim of Discrimination"</u>**

39. Defendant denies the allegations in paragraph 39 of Plaintiff's Complaint.

40. Defendant affirmatively states the allegations in paragraph 40 of Plaintiff's Complaint present determinations of law to which no response is required. To any extent a response is required, Defendant denies the allegations in paragraph 40 of Plaintiff's Complaint.

41. Defendant affirmatively states the allegations in paragraph 41 of Plaintiff's Complaint present determinations of law to which no response is required. To any extent a response is required, Defendant denies the allegations in paragraph 41 of Plaintiff's Complaint.

42. Defendant affirmatively states the allegations in paragraph 42 of Plaintiff's Complaint present determinations of law to which no response is required. To any extent a response is required, Defendant denies the allegations in paragraph 42 of Plaintiff's Complaint.

**<u>Response to "Claim of Retaliation"</u>**

43. Defendant affirmatively states the allegations in paragraph 43 of Plaintiff's Complaint present determinations of law to which no response is required. To any extent a response is required, Defendant denies the allegations in paragraph 43 of Plaintiff's Complaint.

44. Defendant affirmatively states the allegations in paragraph 44 of Plaintiff's

Complaint present determinations of law to which no response is required. To any extent a response is required, Defendant denies the allegations in paragraph 44 of Plaintiff's Complaint.

45. Defendant affirmatively states the allegations in paragraph 45 of Plaintiff's Complaint present determinations of law to which no response is required. To any extent a response is required, Defendant denies the allegations in paragraph 45 of Plaintiff's Complaint.

## **Response to Prayer for Relief**

Defendant denies Plaintiff is entitled to any claim for relief, including but not limited to the allegations respecting any such relief, set forth after the word "WHEREFORE" on page 10 [ECF No. 1] of Plaintiff's Complaint.

## **General Denial**

Defendant denies each and every allegation set forth in Plaintiff's Complaint not specifically admitted herein.

## **Demand for Jury Trial**

Defendant requests a trial by jury of all claims in this matter.

## **Defenses and Affirmative Defenses**

1. Plaintiff's Complaint fails to state a claim upon which relief may be granted against Defendant.

2. Plaintiff is not entitled to the relief sought in the Complaint under any of the theories asserted.

3. Defendant's actions were taken for legitimate nondiscriminatory and nonretaliatory reasons.

4. Plaintiff cannot establish a causal connection between her common law or statutory rights and any adverse employment action.

5. Upon information and belief, Plaintiff may have failed to mitigate her damages, if any, as required by law.

6. At all times pertinent herein, Defendant acted in accordance with all common law, statutory, regulatory, contractual, and policy obligations and without any intent to cause Plaintiff any harm.

7. Plaintiff's injuries and damages, if any, were not caused or aggravated by any action or omission of or by Defendant nor were they proximately caused by or related to any action or omission or of by Defendant.

8. Plaintiff's claims for damages are limited and/or subject to all applicable damages limitations and other similar provisions of both federal and Colorado law.

9. All actions taken by Defendant respecting Plaintiff were reasonable under the circumstances, taken in the course and scope of employment, in the good faith performance of the duties to Defendant, for legitimate business reasons, for the purpose of serving Defendant and in the good faith belief it was acting in compliance with applicable law, and all such actions were based on legitimate nondiscriminatory and nonretaliatory factors.

10. Punitive damages are not recoverable against a public entity.

11. Defendant specifically reserves the right to amend its Answer to include additional defenses and affirmative defenses and/or delete defenses and affirmative defenses which have become applicable or non-applicable upon completion of additional discovery.

**Jury Demand**

Pursuant to Fed. R. Civ. P. 38(b), Defendant hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 28th day of October, 2024.

*s/ Kendra K. Smith*
Kendra K. Smith, Esq.
Danyelle Semjonovs, Esq.
Hall & Evans, L.L.C.
1001 Seventeenth Street, Suite 300
Denver, CO 80202
(303) 628-3300
smithk@hallevans.com
semjonovsd@hallevans.com

**ATTORNEY FOR DEFENDANT CITY OF FORT COLLINS**

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on the 28th day of October, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/EFC system which will send notification of such filing to the following e-mail addresses:

Robert M. Liechty
ROBERT LIECHTY PC
1800 Gaylord Street
Denver, Colorado 80206
(303) 861-5300
rliechty@crossliechty.com

**Attorney for Plaintiff**

*s/ Rebecca Walker*, Legal Assistant of
Hall & Evans, L.L.C.