IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02336-RMR-NRN

LAURELEI O'RYAN,

Plaintiff,

v.

CITY OF FORT COLLINS,

Defendant.

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant City of Fort Collins, through its attorneys, respectfully submits this Motion for Summary Judgment:

**INTRODUCTION**

Plaintiff asserts a claim of Title VII retaliation[1] against her former employer the City of Fort Collins ("the City" or "Fort Collins") related to her termination of employment. The undisputed facts show Fort Collins terminated Plaintiff for violating City policies prohibiting threatening conduct, entitling the City to summary judgment on Plaintiff's claim.

---

[1] Plaintiff's Complaint included a Title VII sex discrimination claim in addition to her Title VII retaliation claim. [See ECF 1, at ¶¶ 39-42]. Plaintiff voluntarily dismissed the Title VII sex discrimination claim with prejudice. [See [ECF 31] (Plaintiff's Motion to Dismiss) and [ECF 32] (Order Granting Plaintiff's Motion to Dismiss)].

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS[2] [3]

**A. Plaintiff's Hire**

1. On May 21, 2018, Fort Collins hired Plaintiff as a Utility Worker in its Water Treatment Department. [Deposition of Plaintiff, Ex. A-1, at 63:2-11; Personnel Records, Ex. A-2, at COFC_000011]. Plaintiff worked in that department until her termination on June 15, 2023. [Answer [ECF 18], at ¶ 1].

**B. Plaintiff's Experience with Promotion Opportunities at the City**

2. In 2017, prior to Plaintiff's hire, Plaintiff, Colby Graves, and Tyler Wells each applied for a Plant Operator position at the City. [Answer [ECF 18], at ¶ 4].

3. Mr. Wells, who had worked as an Operator for the City previously, was hired for the Plant Operator position. [Answer [ECF 18], at ¶ 4].

4. In 2019, the reporting structure for Utility Worker positions changed. [Answer [ECF 18], at ¶ 8].

5. In June of 2019, Plaintiff interviewed for and received promotion to the Plant Operator position. [Ex. A-1, at 63:24-64:2; Answer [ECF 18], at ¶ 8].

6. Gregg Stonecipher, Director of Plant Operations, was on the hiring panel for the Plant Operator position for which Plaintiff applied and was hired in 2019. [Fed. R. Civ. P. 30(b)(6) Deposition of Designee Stonecipher, Ex. A-3, at 26:11-29:4; 42:12-43:8]. Mr. Stonecipher told Plaintiff she was discriminated against in that interview process because one panelist raised

[2] These facts are undisputed for summary judgment only.

[3] Defendant further incorporates herein the facts the parties have deemed both undisputed and material set forth in the parties' Joint Chart [ECF 33-1].

concerns about Plaintiff applicable to another candidate, but the panelist did not raise the same concerns about the other candidate, and Mr. Stonecipher noted the panelist targeted Plaintiff to discredit her. [Ex. A-3, at 26:11-29:4; 42:12-43:8]. Human Resources investigated following Mr. Stonecipher's concerns, and Plaintiff received the Plant Operator position. [Ex. A-3, at 26:11-29:4; 42:12-43:8].

7. From June 2019 until December 2019, Plaintiff reported to Dale Schnathorst, Lead Operator. [Answer [ECF 18], at ¶ 10]. In December 2019, Mr. Schnathorst retired, and thereafter, Plaintiff reported to Mr. Wells, Lead Operator. [Answer [ECF 18], at ¶¶ 10-11].

8. After Plaintiff began reporting to Mr. Wells, Mr. Wells co-authored a Written Warning related to Plaintiff that was not issued. [Ex. A-1, at 134:14-135:5; Written Warning, Ex. A-4, at COFC_000472-475]. The Written Warning related to perceived "misuse of sick time," "abusive or threatening treatment" and "insubordination or refusal to comply with directives or assignments." [Ex. A-4, at COFC_000472-475; *see also* Joint Chart [ECF 33-1], at p. 14, No. 44].

9. In 2020, Plaintiff received a Quarterly Performance Evaluation from Mr. Wells in which Plaintiff was counseled on behavior with respect to disruptive "loud outbursts." [January 31, 2020 Quarterly Evaluation, Ex. A-5, at COFC_000045-49; *see also* Joint Chart [ECF 33-1], at p. 13, No. 42]. In a follow-up Quarterly Performance Evaluation from Mr. Wells, Mr. Wells noted Plaintiff "has learned to control loud outbursts that had been an issue in Q4 2019." [July 31, 2020 Quarterly Evaluation, Ex. A-6, at COFC_000051-53].

10. In November 2022, Plaintiff applied for a Lead Operator position. [Answer [ECF 18], at ¶ 17].

11. A hiring panel composed of Mr. Stonecipher, Leslie Hill, Director of Sciences, Scott Foreman, Senior Supervisor of Maintenance, Kathleen Ganzer, Chemist, Ross Lamb, Supervisor of Operations, and Mr. Wells interviewed Plaintiff and three other applicants, Casey Blosser, Adam Gerdes, and Kelly Caldwell, for the Lead Operator position. [Answer [ECF 18], at ¶ 17].

12. The Lead Operator hiring panel posed the same interview questions to each candidate, numerical scores were given to each candidate by the panelists, and each candidate was discussed by the panelists after numerical scores were given. [Answer [ECF 18], at ¶ 17].

13. Mr. Blosser ranked highest in numerical scores, and all panelists were comfortable with Mr. Blosser's selection for the Lead Operator role. [Answer [ECF 18], at ¶ 17].

14. The hiring panel did not select Plaintiff for Lead Operator because she did not perform as well during the panel interview and ranked third lowest in the numerical scores. [Answer [ECF 18], at ¶ 17; Wells Affidavit, Ex. A-7, at COFC_001119-1122].

15. Between November 11, 2022, and January 5, 2023, Plaintiff spoke with Mr. Wells regarding her disappointment about the Lead Operator hiring process. [Ex. A-1, at 74:7-13; 89:18-93:24; *see also* Joint Chart [ECF 33-1], at p. 2, No. 6].

16. After November 11, 2022, Plaintiff told Mr. Stonecipher her non-promotion to Lead Operator was discriminatory. [Ex. A-1, 94:2-99:2; *see also* Joint Chart [ECF 33-1], at p. 3, No. 8].

17. During Plaintiff's conversations with Mr. Stonecipher after November 11, 2022, she raised she was unhappy with the decision and unhappy a male had been promoted. [Ex. A-3, at 14:15-15:7]. Mr. Stonecipher responded by giving Plaintiff an overview of reasons why Mr. Blosser was selected, indicating Plaintiff's answers to technical questions were weaker than Mr.

Blosser's answers, there were concerns around her answers, and in his evaluation, some leadership questions as well. [Ex. A-3, at 15:8-21; 41:10-20].

18. When Plaintiff spoke to Mr. Stonecipher about women being treated differently in promotional opportunities, Mr. Stonecipher responded the City is not required to hire women just because they are women; women still have to compete with the men in the pool, and the City does not automatically disqualify men. [Ex. A-3, at 41:21-42:3].

19. Mr. Stonecipher spoke with Mr. Wells about Plaintiff making statements that she believed women were treated differently than men in the department. [Ex. A-3, at 40:16-41:1].

**C. Plaintiff's January 5, 2023, Incident with Mr. Wells**

20. On January 5, 2023, Mr. Wells met with Plaintiff in-person. [Ex. A-7, at COFC_001119-1122; *see also* Joint Chart [ECF 33-1], at p. 3, No. 9].

21. Mr. Wells discussed Plaintiff's handling of chlorine levels. [Ex. A-7, at COFC_001119-1122]. Plaintiff then spoke with Mr. Wells regarding frustrations about the Lead Operator hiring process. [Ex. A-1, at 112:11-19; *see also* Joint Chart [ECF 33-1], at p. 4, No. 12].

22. During the interaction with Mr. Wells, Plaintiff raised her voice at Mr. Wells, told him, "You should be scared" in a raised voice, and when Mr. Wells removed himself from Plaintiff's immediate presence, Plaintiff slammed the door behind his back. [Ex. A-7, at COFC_001119-1122; Ex. A-1, at 121:4-9; January 17, 2023 Email, Ex. A-8, at COFC_000499-500; *see also* Joint Chart [ECF 33-1], at p. 4, No. 13].

23. According to Mr. Wells:

> Without provocation, [Plaintiff] threatened me when she said to my face that I should be afraid. I asked her if this was a threat, and she said 'Yes.' Plaintiff's threat made me feel unsafe. Her tone and demeanor, and the way she pointed at me and looked at me, made me feel physically threatened. I felt like I needed to end

> the conversation and leave the room, so I did. She yelled at me again. As I was leaving the room, I didn't realize that [Plaintiff] was following me. As I left the room, she violently slammed the door immediately behind me. The door slam was very loud, and I felt the wind from the slamming door rush around me. I really felt physically threatened by this.

[Ex. A-7, at COFC_001119-1122; *see also* Joint Chart [ECF 33-1], at p. 5, No. 14].

24. That same day, after Plaintiff's in-person exchange with Mr. Wells, Plaintiff raised her voice at Mr. Wells over the phone loud enough for Mr. Blosser, standing a few feet away, to hear. [Ex. A-7, at COFC_001119-1122; January 23, 2023 Memorandum, Ex. A-9, at COFC_000504-507; May 1, 2023 Memorandum, Ex. A-10, at COFC_000517; Post-Decision Appeal Hearing Transcript, Ex. A-11, at COFC_000799-802 (Blosser Examination); *see also* Joint Chart [ECF 33-1], at p. 5, No. 15].

25. That same day, Mr. Wells informed Mr. Stonecipher of his interaction with Plaintiff, that the interaction made Mr. Wells physically afraid Plaintiff would hurt him, and that Mr. Wells believed Plaintiff's behavior warranted termination. [Ex. A-7, at COFC_001119-1122; Ex. A-3, at 11:8-17; 18:8-19; *see also* Joint Chart [ECF 33-1], at p. 6, Nos. 16-17].

26. Mr. Stonecipher understood Plaintiff's conduct of telling Mr. Wells, "You need to be afraid," and then following Mr. Wells to the door and slamming the door as Mr. Wells was leaving the room to be a direct threat to Mr. Wells. [Ex. A-3, at 17:11-24; 20:19-22].

**D. Plaintiff is Placed on Administrative Leave and Then Terminated**

27. On January 6, 2023, Mr. Stonecipher placed Plaintiff on paid administrative leave after consulting with Human Resources regarding the information given to him by Mr. Wells, and Human Resources "verified that they found it credible enough to proceed with administrative leave

while further investigation occurred." [Ex. A-3, at 11:23-12:14; Notice of Administrative Leave, Ex. A-12, at COFC_001344; *see also* Joint Chart [ECF 33-1], at p. 6, No. 18].

28. After the January 5, 2023, incident, Mr. Stonecipher had two or three conversations with Plaintiff. [Ex. A-3, at 13:6-11].

29. Mr. Stonecipher testified Plaintiff explained to him she intended the comment to Mr. Wells, "you should be afraid" to mean "the utility should be concerned about how it looks when, in her words, less experienced men are promoted over more experienced women." [Ex. A-3, at 20:19-21:4].

30. Mr. Stonecipher testified Plaintiff's explanation of her comment "you should be afraid" made sense to him that "could well have been her intention in the moment, but it is not what she communicated in that moment. It is not how she came across." [Ex. A-3, at 21:5-16].

31. Mr. Stonecipher construed Plaintiff's comment to Mr. Wells of "you should be afraid" as a "means of expressing and getting anger out." [Ex. A-3, at 22:10-16].

32. Mr. Stonecipher testified, during his conversations with Plaintiff following the January 5, 2023 incident, Plaintiff offered ways in which she felt Mr. Wells needed to change his behavior, and Plaintiff offered no statement regarding her own behavior or commitments to change her behavior. [Ex. A-3, at 36:12-19].

33. On January 17, 2023, Plaintiff emailed Mr. Stonecipher and Maryann Fillingim, Human Resources, stating, in part:

> . . . I do regret that I slammed the door and raised my voice . . . since my anger was not dissipating I was trying to keep to myself. I was trying a different treatment with my Dr. And we were both aware that the treatment could either make things worse or make things better . . . It doesn't mean that I am justifying raising my voice or slamming the door. It means that I was implementing a plan on my own in order to be proactive. To be clear, I am not upset that I didn't get the position.

> I'm upset that less experienced men are consistently get positions and promotions over more experienced women. The excuses keep changing and I have brought it up to several managers over several years to no avail. I was trying to find a way to cope. I am still trying. I don't think my actions constitute a danger to my fellow coworkers or a destruction of property as stated in the city code you provided, but I am sorry for my actions. My plan would be to continue to work with my Dr. To find more constructive ways to handle this. This was my intention all along.

[Ex. A-8, at COFC_000499-500; *see also* Joint Chart [ECF 33-1], at p. 7, No. 21].

34. In response to Plaintiff's January 17, 2023, email, Mr. Stonecipher emailed Ms. Fillingim stating, in part:

> I appreciate that [Plaintiff] has taken a much softer tone and is expressing remorse for her behavior. However, I don't think [it] is enough to change course. I still do not see any concrete commitments to actions on her part to create healthier interactions at work. The commitment to continue working with her doctor is merely a commitment to continue doing the same things she has already been doing that haven't been working. It's a continuation of a documented pattern of behavior going back at least three years and has only gotten worse over that time. This latest email gives me no confidence that things will change. **<u>I still cannot in good faith support her return to work at this point</u>**. Please let me know if you see anything differently here that I may be missing and should be considering prior to our meeting this afternoon. I've advised Tyler [Wells] to come to that meeting prepared with his recommendation.

[Ex. A-8, at COFC_000499-500 (emphasis added); *see also* Joint Chart [ECF 33-1], at p. 7, No. 22].

35. On January 23, 2023, Mr. Wells issued a Memorandum, copying Mr. Stonecipher, recommending Plaintiff's termination. [Ex. A-3, at 10:13-25; Ex. A-9, at COFC_000504-507; *see also* Joint Chart [ECF 33-1], at p. 7, No. 23].

36. Mr. Wells' Memorandum cited Plaintiff's conduct during the January 5, 2023, incident, explaining Plaintiff's conduct violated City Personnel Policies prohibiting threatening conduct. [Ex. A-9, at COFC_000504-507].

37. Per City policy, ". . . the following are some of the types of conduct which could lead to disciplinary action up to and including termination of employment: . . . (7) Abusive or threatening treatment of any person, including, but not limited to physical or verbal confrontation." [Personnel Policies and Procedures, Ex. A-13, at COFC_000239; Ex. A-9, at COFC_000504-507; *see also* Joint Chart [ECF 33-1], at p. 10, No. 32].

38. Per City policy, the City prohibits violent acts and threats to commit such acts, including physical abuse, threats to inflict violence on a person or property, direct or veiled threats, threatening remarks, and threatening behaviors. [Ex. A-13, at COFC_000170; *see also* Joint Chart [ECF 33-1], at p. 11, No. 33].

39. On January 24, 2023, pursuant to City procedure, the City held a First Pre-Decision Hearing to present information for proposed discipline and give Plaintiff an opportunity to be heard. [Ex. A-13, at COFC_000166-167; Ex. A-9, at COFC_000504-507; *see also*, Joint Chart [ECF 33-1], at p. 8, No. 24]. Plaintiff attended the First Pre-Decision Hearing, with counsel, and alleged discrimination with respect to her non-selection for the Lead Operator position. [Ex. A-1, at 149:15-151:23; *see also*, Joint Chart [ECF 33-1], at p. 8, No. 24].

40. As a result of Plaintiff's discrimination complaint, the City paused its disciplinary process, undertook a third-party investigation into Plaintiff's complaint, and following that investigation, re-instituted the disciplinary process on May 1, 2023. [Ex. A-10, at COFC_000516-519; *see also*, Joint Chart [ECF 33-1], at p. 8, Nos. 25-26].

41. On May 11, 2023, the City held a Second Pre-Decision Hearing regarding recommended termination of Plaintiff's employment as a result of the January 5, 2023 incident. [June 15, 2023 Memorandum, Ex. A-14, at O'Ryan 146-150; *see also*, Joint Chart [ECF 33-1], at

p. 9, No. 28]. The Second Pre-Decision Hearing was held before Jeremy Woolf, Senior Director of Water Operations, and Plaintiff and her attorney attended that hearing. [*Id.*].

42. At the May 11, 2023, Second Pre-Decision Hearing, Plaintiff had an opportunity to be heard and presented a prepared statement. [Ex. A-1, at 179:1-6; Plaintiff's Prepared Statement, Ex. A-15, at COFC_000549-564; *see also*, Joint Chart [ECF 33-1], at p. 9, No. 29].

43. On June 15, 2023, Mr. Woolf issued a Memorandum terminating Plaintiff's employment. [Ex. A-14, at O'Ryan 146-150; *see also*, Joint Chart [ECF 33-1], at p. 10, No. 30].

44. Mr. Woolf made the final decision to terminate Plaintiff. [Ex. A-3, at 10:13-11:3].

45. In terminating Plaintiff, Mr. Woolf found Plaintiff's conduct during the January 5, 2023, incident violated City policies prohibiting threats. [Ex. A-14, at O'Ryan 146-150; *see also*, Joint Chart [ECF 33-1], at p. 10, No. 31]. In reaching this finding, Mr. Woolf made credibility determinations:

> I find Mr. Wells to be credible in his assertions that on January 5, 2023, you stated to him, 'you should be scared,' followed him towards the door of the library and, by your own admission, then slammed the door after he exited. I find Mr. Wells' assertion to be credible that after he asked you if you were threatening him, you said yes. I find it reasonable that Mr. Wells received this statement by you as a threat. I also find that the evidence supports that you later called Mr. Wells and continued this altercation using a raised voice, which Mr. Wells described as screaming. I do not find your subsequent characterization of that incident – that you were warning Mr. Wells of the risk of gender discrimination claims against the City – to be credible, but rather a self-serving recharacterization.

[Ex. A-14, at O'Ryan 146-150].

46. Mr. Wells, Mr. Stonecipher, and a representative of Human Resources met with Plaintiff, and Mr. Wells notified Plaintiff she was terminated. [Ex. A-3, at 13:12-22].

47. Mr. Stonecipher testified Plaintiff's termination was based on Plaintiff's threat to Mr. Wells. [Ex. A-3, at 17:8-10].

48. Prior to January 2023, there were no discussions about terminating Plaintiff. [Ex. A-3, at 25:1-6].

49. On June 29, 2023, Plaintiff appealed Mr. Woolf's termination decision. [First Appeal, Ex. A-16, at COFC_000524-537; *see also*, Joint Chart [ECF 33-1], at p. 12, No. 36].

50. On July 24, 2023, an appeal hearing was held before Kendall Minor, Utilities Service Executive Director, and on August 25, 2023, Mr. Minor issued a Memorandum, affirming Mr. Woolf's termination of Plaintiff. [Appeal Decision Memorandum, Ex. A-17, at COFC_000538-541; *see also*, Joint Chart [ECF 33-1], at pp. 12-13, Nos. 37-38]. After reviewing the submissions of Plaintiff and the City at the Pre-Decision Hearing and speaking with Mr. Woolf regarding the information formulating his decision, Mr. Minor found Plaintiff violated City policies by her statement to Mr. Wells that he should be scared, which Mr. Wells perceived as a threat, and which Mr. Woolf found to be a reasonable interpretation. [*See id.*].

51. On August 28, 2023, Plaintiff appealed Mr. Minor's decision. [Second Appeal, Ex. A-18, at COFC_000545-548; *see also*, Joint Chart [ECF 33-1], at p. 13, No. 39].

52. On December 8, 2023, Independent Hearing Officer Kathey Guckenberger held a Post-Decision Appeal Hearing in which Plaintiff was represented. [Ex. A-11, at COFC_000782-1111]. The City and Plaintiff presented witness examinations, cross-examinations, and documentary evidence. [*See id.*]. Mr. Blosser, Dennis Morrison, Mr. Stonecipher, Mr. Woolf, Mr. Minor, Ms. Fillingim, and Plaintiff were examined and cross-examined by the parties' representatives. [*See id.*]. Nineteen exhibits were presented. [*See id.*].

53. On February 13, 2024, following the City's and Plaintiff's presentation of evidence, Independent Hearing Officer Guckenberger issued Factual Findings and a Recommendation to uphold Plaintiff's termination. [Guckenberger Decision, Ex. A-19, at COFC_001112-1169].

54. Independent Hearing Officer Guckenberger found the City proved Plaintiff engaged in threatening treatment of a person through verbal confrontation on January 5, 2023, in violation of City policy, that cause existed for Plaintiff's termination, and the action taken was reasonable and appropriate in light of the evidentiary findings of fact. [Ex. A-19, at COFC_001117].

55. Independent Hearing Officer Guckenberger found sufficient credible evidence to support the City's termination of Plaintiff for cause, noting Plaintiff admitted, in the hours and days after the January 5, 2023 incident as well as during the Post-Decision Appeal Hearing, to telling Mr. Wells "you should be scared," and admitted to slamming the door. [*Id.*]. Independent Hearing Officer Guckenberger found "the great weight of the evidence and the inconsistency of O'Ryan's statements on and after January 5, 2023 not only support the assertions in Wells's affidavit, but indicate that O'Ryan's subsequent denials and attempt to recharacterize a threatening statement made in a threatening manner are not credible." [*Id.*]. Independent Hearing Officer Guckenberger found Plaintiff had a history of angry, argumentative, and sometimes violent and threatening behavior at work based on the January 13, 2020 Memorandum co-authored by Mr. Wells that was not delivered to Plaintiff as well as the January 31, 2020 Quarterly Evaluation which noted Plaintiff's need to "control her angry outbursts." [*Id.*]. Independent Hearing Officer Guckenberger found Plaintiff did not prove her assertion Mr. Wells was a "serial prevaricator" or discredit the testimony of the City's witnesses or the assertions in Wells's affidavit. [*Id.*].

56. On March 5, 2024, following careful review of Independent Hearing Officer Guckenberger's findings and recommendation as well as the Post-Decision Appeal Hearing transcript containing all witness examinations and exhibits submitted, City Manager Kelly DiMartino issued the City's Final Decision upholding Plaintiff's termination. [March 5, 2024 Memorandum, Ex. A-20, at COFC_001170-1171; Joint Chart [ECF 33-1], at p. 13, No. 41].

## ARGUMENT

### I. Plaintiff cannot show causation.

Title VII retaliation requires but-for causation. ***Univ. of Tex. Sw. Med. Ctr. v. Nassar***, 570 U.S. 338, 360 & 363 (2013). It is undisputed Plaintiff made complaints. Yet, Plaintiff cannot prove the complaints formulating purported protected activity were the factor that made the difference to the termination decision or the appeal decisions upholding the termination. This alone defeats Plaintiff's retaliation claim.

Preliminarily, the complaints formulating the purported protected activity during Plaintiff's employment consisted of Plaintiff's complaints to Mr. Wells and Mr. Stonecipher of non-selection for Lead Operator and/or women being passed over for promotion, which she construed to be discriminatory. [*See* Joint Chart, [ECF 33-1], at p. 17, No. 6]; [DSUMF ¶¶ 15-18][4]. During Plaintiff's administrative leave and prior to termination, it is undisputed Plaintiff complained of discrimination during the January 24, 2023, First Pre-Decision Hearing. [¶¶ 39-40; *see also* Joint Chart, [ECF 33-1], at p. 8, No. 24]. Importantly however, Plaintiff's January 5, 2023, conduct of raising her voice at Mr. Wells, telling Mr. Wells "you should be scared" in a raised voice, slamming

[4] Whenever possible, factual references are made to the paragraph numbers of the above Defendant's Statement of Undisputed Material Facts.

the door behind Mr. Wells, and thereafter raising her voice over the phone at Mr. Wells does not constitute protected activity. [¶¶ 22-24; *see also* Joint Chart, [ECF 33-1], at p. 4, No. 13]. The EEOC Enforcement Guidance explains:

> Courts and the Commission balance the right to oppose employment discrimination against the employer's need to have a stable and productive work environment. For this reason, the protection of the opposition clause only applies where the **manner** of opposition is reasonable . . . On the other hand, it is not reasonable opposition if an employee, for example, makes an overwhelming number of patently specious complaints . . . . The activity also will not be considered reasonable if it involves an unlawful act, such as committing or threatening violence to life or property.

*See e.g.*, EEOC Enforcement Guidance on Retaliation and Related Issues (II)(A)(2)(b) (emphasis in original) (internal citations omitted)[5]. Other circuits addressing this issue align with the EEOC. *See*, e.g., ***Rollins v. Florida Dep't of Law Enforcement***, 868 F.2d 397, 401 (11th Cir. 1989) ("the manner in which an employee expresses her opposition to an allegedly discriminatory employment practice must be reasonable," finding complaints unprotected where plaintiff's complaints were accompanied by name-calling her supervisor); *see also, e.g.,* ***Hochstadt v. Worcester Foundation for Experimental Biology***, 545 F.2d 222, 234 (1st Cir. 1976)) (constant complaints of discrimination at inappropriate times and settings damaging team morale were unprotected, constituting legitimate reason for termination). Even if Plaintiff's statement of "you should be scared" was intended to implicate discrimination as Plaintiff contends, making such a statement in a raised voice in the context of slamming the door behind her supervisor as her supervisor attempted to leave the interaction is not a reasonable manner of opposition. See *supra*.

---

[5] EEOC Enforcement Guidance on Retaliation and Related Issues -- https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues#b._Manner

With respect to Plaintiff's complaints, outside of the January 5, 2023 incident, regarding non-selection for Lead Operator or women passed over for promotion, Plaintiff cannot show this purported protected activity made the difference to the termination decision. Mr. Woolf terminated Plaintiff because, after reviewing submissions from Plaintiff and Mr. Wells, Mr. Woolf found Mr. Wells credible in asserting Plaintiff told Mr. Wells, "you should be scared," followed Mr. Wells towards the door and slammed the door after he exited, and later called Mr. Wells and continued the altercation in a raised voice in violation of City policies prohibiting threats. [¶ 45; Ex. A-14, at O'Ryan 146-150]. Mr. Woolf does not cite another basis for termination other than Plaintiff's conduct during this incident. [*See id.*]. Mr. Woolf acknowledges Plaintiff's written submission included allegations of discrimination and assertions of prior complaints, but cites the only example provided by Plaintiff to Mr. Woolf was on January 17, 2023, which was investigated by a third-party who found no discrimination or retaliation. [¶ 45; Ex. A-14, at O'Ryan 149]. There is nothing to suggest, in deciding to terminate Plaintiff, Mr. Woolf held retaliatory animus.

It is true Mr. Wells recommended Plaintiff's termination, [¶¶ 25; 35-36] and Mr. Stonecipher facilitated that recommendation and placed Plaintiff on administrative leave, [¶¶ 25-27; 34], but Plaintiff cannot show either of these individuals did so for any reason other than Plaintiff's conduct during the January 5, 2023 incident. [¶¶ 25-32; 34-36]. Mr. Wells and Mr. Stonecipher were each aware of Plaintiff's complaints related to her non-selection for Lead Operator as a result of conversations Plaintiff had with them, [¶¶ 15-19; 21], but there is no evidence these complaints factored into much less were the but-for cause of the recommendation for termination or the support for the recommendation. [¶¶ 25-32; 34-36]. Neither Mr. Wells or Mr. Stonecipher commented they were upset with Plaintiff for making complaints. Indeed, in

response to Plaintiff's complaints, Mr. Stonecipher simply outlined the legitimate non-discriminatory reasons why Plaintiff did not receive promotion to Lead Operator. [¶¶ 17-18]. And even in contrast to having retaliatory animus, Mr. Stonecipher previously initiated and supported concerns of discrimination related to Plaintiff regarding the interview process for the Plant Operator role, and after doing so, Plaintiff received that role. [¶¶ 5-6].

Mr. Wells and Mr. Stonecipher each supported Plaintiff's termination for the stated reason that Plaintiff's conduct during the January 5, 2023, incident was a continuation of unacceptable outburst behavior when Plaintiff first began reporting to Mr. Wells. [¶¶ 34-36]. There is evidence Mr. Wells supported Plaintiff's termination for the additional reason he believed on January 5, 2023, Plaintiff did not appropriately adjust chlorine levels, but Mr. Woolf ultimately did not find that reason as probative as Plaintiff's conduct of telling Mr. Wells he should be scared in a raised voice and slamming the door behind him when he attempted to exit the exchange. [*See* Ex. A-14, at O'Ryan 147]. Mr. Wells stated Plaintiff's conduct during the January 5, 2023, interaction made him physically afraid, and Mr. Stonecipher believed Mr. Wells. [¶¶ 23; 25; 26; 29-31]. There is no evidence showing Mr. Wells' and Mr. Stonecipher's perceptions in this regard are retaliatory.

Plaintiff further cannot show any purported protected activity made the difference to the appeal decisions to uphold the termination decision. Mr. Minor first upheld Mr. Woolf's decision, Independent Hearing Officer Guckenberger second upheld Mr. Woolf's decision, and City Manager Kelly DiMartino third upheld Mr. Woolf's decision. [¶¶ 50; 52-56]. There is no suggestion these decision-makers upheld the termination for any reason other than Plaintiff's conduct during the January 5, 2023, incident. Plaintiff has not shown the requisite causal nexus. ***Nassar**,* 570 U.S. at 360 & 363.

**II. Plaintiff cannot establish pretext.**

The City terminated Plaintiff and upheld the termination for a legitimate reason unrelated to complaints regarding non-selection for Lead Operator or discrimination. Specifically, Plaintiff violated City policies prohibiting threats when she told Mr. Wells "you should be scared," followed Mr. Wells towards the door and slammed the door after he exited, and later called Mr. Wells and continued the altercation in a raised voice. [¶¶ 22; 24; 37; 38; 43-45]. Where the employer articulates a legitimate reason for adverse action, the burden shifts to plaintiff to show the proffered reason is pretext and instead retaliatory. ***Sanders v. Southwestern Bell Telephone, L.P.,*** 544 F.3d 1101, 1105 (10th Cir. 2008). Plaintiff may not speculate his employer "must have" acted in a retaliatory fashion. ***Panis v. Mission Hills Bank, N.A.,*** 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied,* 516 U.S. 1160 (1996); ***Faulkner v. Super Valu Stores, Inc.,*** 3 F.3d 1419, 1426 n. 4 (10th Cir. 1993). A reason is not a pretext unless it is shown both that the reason was false, and that retaliation was the real reason. ***Trujillo v. Univ. of Colo. Health Scis. Ctr***., 157 F.3d 1211, 1215 (10th Cir. 1998) (quoting ***St. Mary's Honor Ctr. v. Hicks***, 509 U.S. 502, 515 (1993)).

Whether an employer's decision is a pretext must be judged from the employer's perspective. ***Bullington v. United Air Lines, Inc.,*** 186 F.3d 1301, 1318 (10th Cir. 1999) ("The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith"); ***Watts v. Norman,*** 270 F.3d 1288, 1295 (10th Cir. 2001), *cert. denied,* 535 U.S. 1055 (2002) ("In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision").

Even if Plaintiff argues pretext because Mr. Wells recommended Plaintiff's termination or Mr. Stonecipher supported the recommendation, and those individuals had previously received complaints of discrimination by Plaintiff, such argument fails. To begin, there is nothing to suggest Mr. Wells or Mr. Stonecipher harbored retaliatory animus. [*See* supra]. Nonetheless, even if Mr. Wells' recommendation could be construed as biased, the City did not take Mr. Wells' recommendation at face value. Instead, the City undertook an extensive process to independently and objectively verify the facts set forth in the recommendation. Even where plaintiff claims information came from a biased source, such is insufficient to establish pretext where the employer independently verifies the facts. ***Lawrence v. Sch. Dist. No. 1***, 560 F. App'x 791, 796 (10th Cir. 2014); ***Lobato v. New Mexico Env't Dep't***, 733 F.3d 1283, 1295 (10th Cir. 2013) ("In short, an employer is not liable under a subordinate bias theory if the employer did not rely on any facts from the biased subordinate in ultimately deciding to take an adverse employment action—even if the biased subordinate first alerted the employer to the plaintiff's misconduct").

Mr. Woolf made the decision to terminate Plaintiff. [¶¶ 43-44]. Mr. Woolf did not rubberstamp Mr. Wells' recommendation. Instead, Mr. Woolf allowed Plaintiff and Mr. Wells an independent opportunity to be heard regarding the January 5, 2023, incident. [¶¶ 41-42]. Indeed, Mr. Woolf rejected one recommended basis for termination by Mr. Wells regarding chlorine levels. [*See* Ex. A-14, at O'Ryan 147]. Based on information provided by Mr. Wells and Plaintiff, and Plaintiff's <u>**admitted**</u> conduct of telling Mr. Wells he should be scared, raising her voice at him, slamming the door, and later raising her voice at him over the phone, it was objectively

reasonable for Mr. Woolf to find Plaintiff violated City policies prohibiting threats and to terminate her. [¶ 45]; ***Watts,*** 270 F.3d at 1295.

At each successive level of review of the termination decision, the City undertook independent verification. Mr. Minor first upheld Mr. Woolf's decision. In doing so, Mr. Minor independently reviewed the submissions of Plaintiff and the City at the Pre-Decision Hearing and spoke with Mr. Woolf to evaluate the information formulating his decision. [¶ 50]. Independent Hearing Officer Guckenberger second upheld Mr. Woolf's termination decision. In doing so, she heard directly from Plaintiff, Mr. Blosser, Mr. Morrison, Mr. Stonecipher, Mr. Woolf, Mr. Minor, and Ms. Fillingim, and reviewed nineteen exhibits, including Mr. Wells' Affidavit, to reach factual findings regarding the events of January 5, 2023, and a recommendation upholding termination. [¶¶ 52-55]. City Manager DiMartino third upheld Mr. Woolf's decision. [¶ 56]. In doing so, she carefully and independently reviewed Guckenberger's findings and recommendation as well as the underlying information on which it was based, including the Post-Decision Appeal Hearing transcript containing all witness examinations, cross-examinations, and exhibits. [*Id.*].

Thus, while Mr. Wells' recommendation certainly got the ball rolling, it was not decisive such that any alleged retaliatory bias related to the recommendation (even though the record suggests none) cannot show the termination decision and appeal decisions were pretextual. ***Lawrence***, 560 F. App'x at 796; ***Lobato***, 733 F.3d at 1295. It was Mr. Woolf's, Mr. Minor's, Ms. Guckenberger's, and Ms. DiMartino's prerogative to deem Mr. Wells' perception of a threat credible based on Plaintiff's admitted conduct and all of the information before them at each level of independent review, even if they were mistaken in their belief regarding Mr. Wells' credibility, and there is no evidence of a retaliatory motive in finding Mr. Wells' perception credible. ***Kendrick***

***v. Penske Transp. Servs., Inc.***, 220 F.3d 1220, 1231 (10th Cir. 2000) ("[A] challenge of pretext requires [the Court] to look at the facts as they appear to the person making the decision to terminate plaintiff . . . [and] [a] mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual"). No basis exists to suggest the City's rationale for terminating Plaintiff and upholding the termination is so unworthy of belief to be considered a pretext for retaliation. ***EEOC v. Picture People, Inc.,*** 684 F.3d 981, 989 (10th Cir. 2012) (rejecting invitation to act as a super personnel department second guessing employers' business judgments); ***Young v. Dillon Cos., Inc***., 468 F.3d 1243, 1250 (10th Cir. 2006) (same).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court grant it summary judgment on Plaintiff's claim, dismiss Plaintiff's claim with prejudice in its entirety, and for all other and further relief this Court deems just and appropriate.

Dated this 9th day of January, 2026.

Respectfully submitted,

*s/ Kendra K. Smith*
Kendra K. Smith, Esq.
Danyelle Semjonovs, Esq.
Andrew D. Ringel, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, Colorado 80202
Tel: (303) 628-3300
Fax: (303) 628-3368
smithk@hallevans.com
semjonovsd@hallevans.com
ringela@hallevans.com

**ATTORNEYS FOR DEFENDANT CITY OF FORT COLLINS**

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on the 9th day of January, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Robert M. Liechty
rliechty@crossliechty.com
*Attorney for Plaintiff*

s/ Rebecca Walker, Legal Assistant of
Hall & Evans, L.L.C.

Kendra K. Smith, Esq.
Danyelle Semjonovs, Esq.
Andrew D. Ringel, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, Colorado 80202
Tel: (303) 628-3300
Fax: (303) 628-3368
smithk@hallevans.com
semjonovsd@hallevans.com
ringela@hallevans.com

**ATTORNEYS FOR DEFENDANT CITY OF FORT COLLINS**